# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT ZANGARA and | : | |
| MARY PRESNELL, on behalf of themselves | : | Case No. 1:05cv731 |
| and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS INDEMNITY COMPANY | : | MEMORANDUM AND OPINION |
| OF AMERICA and TRAVELERS PROPERTY | : | |
| CASUALTY INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |

Before the Court is *Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* ("Motion to Dismiss") (Doc. #11) filed by Defendants Travelers Indemnity Company of America and Travelers Property Casualty Insurance Company (collectively, "Travelers"). Travelers asks the Court to dismiss a class action Complaint[1] filed by Plaintiffs Vincent Zangara and Mary Presnell ("Plaintiffs") on behalf of themselves and all others similarly situated.[2] Plaintiffs have filed a brief in opposition (Doc. # 19), and Travelers has filed a brief in reply (Doc. # 32). Accordingly, this matter is ripe for adjudication. For the reasons articulated below, Travelers motion is **DENIED**.

---

[1] "Complaint" refers to Plaintiffs' First Amended Class Action Complaint (Doc. #40).

[2] On February 2, 2006, Mary Presnell filed a notice of withdrawal as named plaintiff in this case (Doc. #54). Travelers did not file an opposition, and the Court GRANTED Presnell's request to withdraw as named plaintiff in a non-document order on March 3, 2006. Because the briefing on Travelers' Motion to Dismiss was filed before Presnell's notice of withdrawal, the Complaint and the briefs refer to the named Plaintiffs in the plural, and the Court does so as well for consistency.

## I.    BACKGROUND

The substance of Plaintiffs' Complaint is as follows.  Plaintiffs allege that Travelers sells identical homeowners insurance policies at multiple prices and conceals the existence of the lower-priced, but identical, policies from eligible consumers.  According to Plaintiffs, the policies are sold to consumers in the same risk class at different prices, and the differences in the prices do not relate to underwriting factors.  For example, in some states (including Ohio) Travelers designates insurance policies of varying prices as "Platinum," "Gold," and "Silver," but, according to Plaintiffs, the designations are meaningless in terms of coverage and service; only the prices of the policies differ. Plaintiffs claim that an individual consumer may be eligible for all three policies but is offered only the highest-priced Platinum policy without being made aware of the lower-priced, but identical, Gold and Silver policies.

Plaintiffs also allege that Travelers' agents receive a higher commission for selling the higher-priced policies and, therefore, have a financial incentive to conceal the availability of the lower-priced policies.  Moreover, according to Plaintiffs, Travelers exercises control over the sales process by providing software to its agents that generates, and enables agents to quote, multiple premiums for identical insurance policies based on the same underwriting criteria.

According to the Complaint, in each state where Travelers' subsidiaries or affiliates employ the multiple-priced policy plan described above, Travelers uses purportedly distinct companies to sell insurance at each of its rates.  Further, Plaintiffs allege, Travelers' subsidiaries and affiliates are created and discontinued periodically to enable the sale of identical insurance at multiple prices, and these subsidiaries have few or no employees but are mere constructs to facilitate the multiple-price scheme.

2

Significantly for purposes of Travelers' present motion, the Complaint alleges that Travelers and its agents owe consumers a duty to disclose the availability of the lower-priced policies. Plaintiffs allege that the duty to disclose is based on two separate theories. First, Plaintiffs claim that "Defendants and their agents owe a fiduciary duty to consumers who purchase Travelers homeowners insurance." Second, Plaintiffs claim that "Defendants and their agents owe to Plaintiffs and Class members a duty of full and fair disclosure arising from their superior knowledge of Defendants' homeowners insurance products, a partial speaking (disclosure of only the higher price), concealment of objectively material information (the availability of identical coverage and service at a lower price), with the intent to deceive Plaintiffs and the Class."

As to the named Plaintiffs, the Complaint alleges that, on or about March 19, 2002, Travelers or one of its agents sold the named Plaintiffs a homeowners insurance policy without disclosing the availability of a less expensive policy offering the same coverage and service. Plaintiffs challenge this alleged scheme on behalf of themselves and all others similarly situated, pleading two causes of action against Travelers: (1) Fraud (Count I), and (2) Unjust Enrichment (Count II).

In response, Travelers' position appears simply to be that "there is nothing wrong with charging different prices to different consumers," and that, absent some duty owed to a consumer, failing to disclose the availability of lower-priced policies is not unlawful. In its present motion, Travelers cites to case law in which courts, viewing variable pricing plans and price differentiation favorably, have explained that "[a]irlines frequently charge different groups of customers different rates for the same seat, hotels often charge different rates to different customers for the same room, and car dealerships sell identical vehicles for a variety of prices, depending on the identity (and savvy) of the consumer." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313-14 (11th Cir.

3

2000).   In the context of insurance, Travelers argues, the relationship between a purchaser of insurance and an insurance agent, without evidence of something more, is an ordinary, arm's length business relationship, not a fiduciary one.  Travelers' core argument is that Plaintiffs' allegation that Travelers and its agents owe some duty to consumers, without more, is insufficient to survive a Rule 12(b)(6) motion.  The Court disagrees.  For that reason, as well as others, Travelers' Motion to Dismiss must be denied.

## II.    ANALYSIS

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a claim for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451  F.2d 171, 173 (6th Cir. 1971)).   When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).   A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.    Discussion

Travelers argues that both counts of the Complaint should be dismissed for several reasons. As to Count I (fraud), Travelers argues that (1) Plaintiffs failed to adequately allege a duty on the part of Travelers to disclose the availability of lower-priced policies because (a) the Supreme Court of

4

Ohio,[3] in *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98 (1988), rejected a contention very similar to the contention made by Plaintiffs in this case, and, based on *Blon*, Plaintiffs allegation that Travelers owed a duty to disclose must fail; (b) Plaintiffs failed to allege a fiduciary duty with the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure; and (c) superior knowledge or a partial speaking cannot form the basis of a duty to disclose under the facts alleged; and (2) even if Travelers owed such a duty, Plaintiffs failed to allege that they justifiably relied on the concealment of lower priced-policies.  As to Count II (unjust enrichment), Travelers argues that a claim for unjust enrichment, as a quasi-contract claim, cannot lie where the relationship between the parties is governed by an express contract.

In addition, Travelers argues that Plaintiffs' Complaint is barred by (1) the filed-rate doctrine, which holds that rates filed with the governing regulatory agency are per se reasonable and unassailable in judicial proceedings; and (2) the doctrine of primary jurisdiction, which holds that questions within the special competency of an administrative agency - here, the Ohio Superintendent of Insurance - should be resolved only by that agency.  The Court will address Travelers' arguments in turn.

### 1.    Count I - Fraud

Under Ohio law, the elements of a cause of action for fraud are: (1) a false representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred; (4) with the intent of misleading

---

[3]    Travelers asserts, and Plaintiffs do not refute, that Ohio law applies for purposes of this motion because both named Plaintiffs are Ohio residents who purchased their policies in Ohio.  The Court agrees and applies Ohio substantive law.

another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998). Travelers argues that Plaintiffs' Complaint fails to satisfy the first and fifth elements.

### a. Duty to Disclose

As to the first element, Plaintiffs do not allege a false representation; rather, they allege a concealment of a fact - the existence of lower-priced policies offering identical coverage - in the face of a duty to disclose. A prerequisite for establishing fraud by concealment, of course, is establishing that Travelers owed Plaintiffs a duty to disclose. As discussed above, Plaintiffs allege in their Complaint two duties to disclose owed by Travelers and its agents: (1) a fiduciary duty and (2) a duty of full and fair and disclosure arising from its superior knowledge and a partial speaking. In its Motion to Dismiss, Travelers argues that Plaintiffs' Complaint has failed to adequately allege any duty to disclose because (1) the Supreme Court of Ohio, in *Blon*, decided a case on similar facts and found no duty to disclose, (2) Plaintiffs failed to allege a fiduciary duty with the requisite particularity, and (3) the theories of superior knowledge and a partial speaking cannot form the basis of a duty to disclose under the facts alleged.

### i. *Blon*

Travelers seems to argue that, because *Blon* is factually similar to the present case, the holding of *Blon* mandates dismissal of Plaintiffs' claims that Travelers owed Plaintiffs a duty to disclose the availability of lower-priced policies. Because there are important distinctions between *Blon* and the case at bar, the Court disagrees.

In *Blon*, the plaintiffs bought a used car from the defendant, West Chevrolet, and agreed to have West arrange financing for the car through defendant Bank One, Akron, N.A. *Blon*, 35 Ohio

6

St.3d at 98-99.  The Blons financed the car at an annual rate of 18.5%.  *Id.*  What the Blons did not

know, however, was that West was authorized by Bank One to arrange financing at either 15.5%,

16.5%, 17.5%, or 18.5%, and that West received a fee of 0%, 1%, 2%, or 3%, respectively, of the

face amount of the loan depending on which rate West used to arrange financing.  *Id.*  In addition,

the Blons were unaware that they might be able to receive a lower rate if they financed directly with

Bank One.  *Id.* at 102.  In that case, the court of appeals reversed summary judgment in favor of

Bank One, finding material issues of fact "as to whether a special relationship of trust and confidence

existed between West and the Blons, and whether West acted as an agent of Bank One so that such

a relationship also existed between Bank One and the Blons requiring full disclosure of available

Bank One interest rates and corresponding fees paid to West."  *Id.* at 101.  The Supreme Court of

Ohio reversed and reinstated summary judgment in favor of Bank One, finding that "reasonable

minds could only conclude that Bank One had no special relationship of trust and confidence with

the Blons and, therefore, no duty to disclose the duties of its financing fee arrangement with West."

*Id.* at 101.

The Supreme Court of Ohio relied on the following reasoning, which is worth quoting in full

given the heavy reliance on *Blon* by Travelers:

> The facts before the trial court on summary judgment indicate that Richard Blon had
> experience with credit transactions, having previously purchased two other
> automobiles on credit, one from West and one from a competing dealer; that the
> Blons did not solicit advice regarding other available rates, being satisfied with Bank
> One because it alone extended a forty-two-month repayment period which they
> desired; that West was authorized in its discretion to quote any one of four interest
> rates; that the Blons did not act under any disability; and that they were not
> constrained to seek financing from Bank One, or were otherwise foreclosed from
> credit shopping elsewhere.  Bank One had no greater duty to advise the Blons that
> other customers might receive a lower interest rate or that they could perhaps receive
> a lower rate by financing their purchase directly with Bank One than it had to advise

7

them that another customer might have negotiated a lower price on an identical automobile or that another dealer might sell the automobile for a lower price. Reasonable minds could only conclude that the Blons' credit arrangement with Bank One through West was nothing more than an ordinary arm's-length transaction where each party sought desired advantages of the transaction.

*Id.* at 101-02.

Although *Blon* provides strong support for Travelers' position in this case, there are three significant distinctions between *Blon* and the case at bar that compel the Court to reject Travelers' argument. First, *Blon* was decided in the context of a motion for summary judgment, not a motion to dismiss. The Blons, presumably, had the benefit of a full discovery period in which to produce facts supporting an argument that West or Bank One had a duty to disclose the availability of lower interest rates (such as facts indicating that they placed special trust or confidence in defendants, or that agents of the defendants acted as dual agents). Plaintiffs in this case should be given the same benefit, provided the Complaint otherwise survives a Rule 12(b)(6) motion.

Second, the Supreme Court of Ohio specifically distinguished its holding in *Blon* from prior cases "wherein misrepresentation of the actual cost or condition of realty or property which was the <u>subject</u> of the transaction [was] actionable as fraud." *Id.* at 102 (emphasis in original). In *Blon*, the court explained that "[t]he allegations herein relate to the <u>collateral matter</u> of financing, not the <u>subject</u> of the transaction." *Id.* (emphasis added). In the present case, the sale of homeowners insurance was the <u>subject</u> of the transaction, not a collateral matter. For that reason, *Blon* is distinguishable by its own limitations.

Finally, the holding of *Blon* expressly applies to a creditor-consumer relationship. *Id.* ("Thus, we hold that a creditor and consumer stand at arm's-length in negotiating the terms and

conditions of a consumer loan . . .").  Significantly, the Supreme Court of Ohio also distinguished its holding in *Blon* from a prior case, *Stone v. Davis*, 66 Ohio St.2d 74 (1981), in which it held that, in the context of loan processing, lending institutions owe mortgagors a fiduciary duty to disclose how insurance might be procured.  *Id.*  The holding of *Blon*, therefore, distinguishes the creditor-consumer relationship at least from the loan processor-mortgagor relationship.  There is nothing in the opinion to infer that *Blon* also applies to the insurance context.  The parties cite case law in which courts have come out on both sides as to whether an insured-insurer relationship is an arm's-length relationship or a fiduciary one, and the determination appears largely dependant on the facts of each case. *Compare Roberts v. State Farm Mut. Auto Ins. Co.*, 1982 WL 2284 at *4 (Ohio Ct. App. Jan. 7, 1982) ("The relationship between an insurance salesman and his customer may take on fiduciary dimensions when reliance is reasonably reposed in the salesman by the customer.  It seems reasonable to conclude that in the situation before us, a duty to disclose arose in favor of the plaintiff.") *with Gillin v. Indiana Ins. Co.*, 1998 Ohio App. LEXIS 5039 at *7-8 (Ohio Ct. App. Oct. 30, 1998) (finding no fiduciary relationship between an insurance agent and the insured where the insured failed to rebut evidence put forward by defendants showing that there was not, in fact, a relationship of special trust).

Those cases indicate that the existence of a fiduciary relationship is, in part, a factual question. *See Wanner Metal Worx, Inc. v. Hylant McLean, Inc.*, 2003 WL 1826558 at *8 (Ohio Ct. App. Apr. 7, 2003) (finding that summary judgment was precluded because there was a genuine issue of material fact as to the existence of a fiduciary relationship between the insurance agent and the insured).  As such, it is not appropriately resolved at the pleadings stage, provided that Plaintiffs' Complaint otherwise satisfies the relevant pleading requirements.  For example, the cases cited by

both parties reveal that the existence of a fiduciary relationship may hinge on several variables <u>unique to the insurance context</u>, including whether an insurance salesman is an insurance agent, an insurance broker, an independent insurance agent, or a captive insurance agent.  *See Bishop v. Ingram-Disney, Inc.*, 1994 WL 476216 (Sept. 6, 1994) (discussing the difference between insurance agents, insurance brokers, and independent insurance agents).  The Court, therefore, rejects Travelers' argument that "[t]he fact that Plaintiffs in this case were purchasing insurance (as opposed to financing a car purchase) makes no difference."  Outside of the insurance context, there are other generally applicable factors in determining whether a special duty is owed, including whether a consumer placed a special trust or confidence in another party or whether disclosure is necessary to dispel misleading impressions created by partial revelation of facts.  *See Blon*, 35 Ohio St.3d at 101. The variables unique to the insurance context distinguish the present case from *Blon*, and the <u>factual</u> inquiries involved in determining the existence of a fiduciary duty in any context necessitate rejection of Travelers' argument that *Blon* is controlling in this case.  For those reasons, *Blon* is not fatal to Plaintiffs' Complaint at the pleadings stage.

### ii.    Fiduciary Duty

Plaintiffs also allege that Travelers owed them a duty to disclose because of a fiduciary relationship between Travelers' agent and Plaintiffs.  Travelers contends that, in order for Plaintiffs to establish that Travelers and its agents owed a fiduciary duty to Plaintiffs or other Class members, Plaintiffs must establish that the agents acted as <u>dual</u> agents, representing both Travelers and Plaintiffs at the same time.  Travelers argues that, although it is possible for insurance agents to act as dual agents, Plaintiffs have simply failed to plead the facts to support a claim of dual agency with the requisite particularity.  In pleading a claim for fraud, including fraud by concealment, a plaintiff

10

is required to plead with particularity the circumstances that would establish an agency relationship between themselves and the agent.  *See* Fed. R. Civ. P. 9(b).  Travelers argues that Plaintiffs' Complaint lacks the requisite particularity because Plaintiffs do not allege which agent sold them their insurance, whether that agent was a Travelers agent, and on what basis the agent could be found to be a dual agent.

Travelers cites several cases in which courts have found that an insurance agent acted as a dual agent or owed a fiduciary duty to a purchaser of insurance, including in situations where there was express, informed consent to dual agency and where the purchaser placed some "special trust or confidence" in the agent.  *See Gyori v. Johnston Coca-Cola Bottling Group, Inc.*, 1995 Ohio App. LEXIS 1714 at *35-36 (Ohio Ct. App. April 28 1995), *rev'd on other grounds*, 76 Ohio St. 3d 565 (1996); *Gillin*, 1998 Ohio App. LEXIS 5039 at *7-8.  According to Travelers, Plaintiffs have failed to allege any of the specific circumstances in which dual agency or a fiduciary duty may be found.

In response, Plaintiffs argue that the particularity requirement in Rule 9(b) of the Federal Rules of Civil Procedure must be read in conjunction with, and tempered by, Rule 8(a)'s simple requirement of a "short and plain statement."  Plaintiffs cite primarily to *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988) to argue that, given that the goal of Rule 9(b) is to provide a defendant with fair notice of the substance of a plaintiff's claim, the Complaint satisfies Rule 9(b)'s particularity requirement.  In addition, Plaintiffs argue that the existence of a fiduciary duty is, in part, a factual question and, therefore, not appropriate for resolution at the pleadings stage.

After careful consideration, the Court finds Plaintiffs' points persuasive.  First, as discussed above, Plaintiffs are correct that the existence of a fiduciary duty is, in part, a factual question.  *See infra* Section II.B.1.a.i.  As such, if Plaintiffs have alleged adequately that Travelers and its agents

11

owed them a fiduciary duty, then the question of whether a duty existed in this particular case is a question that needs to be resolved later in the proceedings after discovery has occurred, not on a Rule 12(b)(6) motion.  The question remains, however, as to whether Plaintiffs have indeed alleged a fiduciary duty with the particularity required by Rule 9(b).  The Court finds that they have.

Rule 9(b) provides, in relevant part, that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  Because fraud by concealment is a subcategory of fraud, a plaintiff must plead with particularity that the defendant owed the plaintiff a duty to disclose.  *See, e.g., TXI Operations, LP v. Pittsburgh & Midway Coal Mining Co.,* 2004 U.S. Dist. LEXIS 18047 at *3-4 (N.D. Tex. Sept. 8, 2004).  However, the Sixth Circuit has explained that:

> [i]n ruling on a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court <u>must</u> factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.  Rule 8 requires a 'short and plain statement of the claim' and calls for 'simple, concise, and direct' allegations.  <u>Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony</u> (citations omitted) . . . Given this backdrop admonition of simplicity in pleading, we note that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. (citations omitted).

*Michaels*, 848 F.2d at 679 (emphasis added).

In *Michaels*, the plaintiffs filed a class action complaint under the Racketeer Influenced and Corrupt Organization Act ("RICO") and the Sherman Act against six different banking groups and fifty unnamed "John Doe" employees of the banks.  *Id.* at 676.  Michaels alleged that the defendant banks fraudulently misrepresented to Michaels that they were charging Michaels a "prime interest rate" that was the most favorable rate reserved for the "best commercial borrowers," when, in fact,

12

the banks allowed certain commercial borrowers to borrow at a rate more favorable than the purported prime rate. *Id.* at 677. The defendant banks moved to dismiss the complaint under Rules 9(b) and 12(b)(6), arguing that Michaels failed to identify any rate, loan, or borrower to support their claims that other borrowers received more favorable rates (Michaels' amended complaint only detailed its own loans with defendants, not the loans of other borrowers). *Id.* Finding the failure to identify any borrowers who received more favorable rates to be fatal, the district court dismissed the RICO claims for failure to plead fraud with particularity. *Id.*

The Sixth Circuit reversed, finding that Rule 9(b) does not necessitate the "harsh reality" that the district court attributed to it, especially in light of Rule 8's requirement of a "short and plain statement of the claim." *Id.* at 680. The Sixth Circuit found that the information "missing" from the plaintiffs' complaint (identity of favored borrowers, the rates those borrowers received, and their specific loans) was outweighed by the sufficiency of the description against the defendants (a description of Michaels' own loan transactions and agreements with the banks – "the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to have been misleading or false, the time, place, and content of the representations, the fraudulent scheme . . . "). *Id.* at 679-680. Specifically, the Court found that the "missing" information – the other borrowers and the details of their loans – was information in the possession and control of defendants' and, therefore, relaxed the burden placed on Michaels as to those allegations. *Id.* at 680. The Court also cautioned that "[i]n their insistence upon plaintiffs' producing the actual names of favored borrowers, defendants border on urging that Rule 9(b) requires that plaintiff plead the <u>evidence</u> of the fraud," *id.* at 680, n.9 (emphasis in original), as opposed to the "circumstances" of the fraud as required by the rule.

13

Although *Michaels* involved an affirmative misrepresentation as opposed to fraud by concealment, its holding as to the requirements of Rule 9(b) provides significant guidance for present purposes. In this case, the Court finds that Plaintiffs' Complaint, consistent with the "purpose undergirding the particularity requirement of Rule 9(b)," *id.* at 679, provides Travelers with fair notice of the substance of their claim. The fifty-two paragraph Complaint contains more than sufficienct allegations to make Travelers aware of the substance of Plaintiffs' claims. Paragraph 12 of the Complaint, for example, states that, "[o]n or about March 19, 2002, Defendants sold Plaintiffs their Travelers Indemnity Company of America homeowners insurance policy without disclosing to them the availability of a less expensive Travelers homeowner policy offering identical coverage and policyholder service." That sentence alone contains the date of the transaction, the parties involved, the representations made, the information concealed, and the nature in which the statements are alleged to have been fraudulent.

Although Travelers is correct that the Complaint does not identify by name the insurance agent who sold Plaintiffs their policy, the Court finds that the absence of that information is outweighed by the Complaint's otherwise sufficient description of the details of the alleged fraud. Although the identity of that agent is not <u>solely</u> in the control of Travelers, as was the case in *Michaels* with the identity of the other borrowers (surely the Plaintiffs themselves met or spoke with the agent and discovered his or her name), it is nonetheless information to which Travelers has significantly better access. Presumably, Travelers can identify the agent given the names of the policyholders and the date of the transaction, and it is likely Plaintiffs will learn the name of the agent through discovery. The absence of the name of the agent in the Complaint, therefore, cannot be fatal to Plaintiffs' claim.

14

As to the allegation of a fiduciary duty, Plaintiffs' Complaint makes it abundantly clear that one basis on which they allege a duty to disclose is the existence a fiduciary duty, arising from a dual agency, owed by Travelers and its agents.  Paragraph 16 of the Complaint states that, "Defendants and their agents owe a <u>fiduciary duty</u> to consumers who purchase homeowners insurance."  It goes on to allege that "Defendants utilized and implemented a sales scheme through <u>dual agents</u>, and manipulated the <u>fiduciary duties</u> owed by their <u>dual agents</u> to Plaintiffs and Class members to accomplish their deception."  Such unambiguous language is sufficient to put Travelers on notice of the substance of Plaintiffs' claim, at least as to the basis of the alleged duty to disclose.

Travelers argues that Plaintiffs fail to allege facts that show they placed some special trust or confidence in their agent, an element some courts have required before finding a fiduciary duty. Further, Travelers argues that, "[t]o establish such dual agency, Plaintiffs must allege <u>and prove</u> that both they and Travelers consented to dual representation," but that "Plaintiffs do not even come close to establishing such dual agency."  Travelers asks the Court to read too much into the requirements of Rule 9(b), especially given the direction in *Michaels* to read Rule 9(b) in harmony with Rule 8. As the Sixth Circuit cautioned, "[i]n their insistence upon plaintiffs' producing the actual names of favored borrowers, defendants border on urging that Rule 9(b) requires that plaintiff plead the <u>evidence</u> of the fraud," *id.* at 680, n.9 (emphasis in original), as opposed to the "circumstances" of the fraud as required by the rule.  Likewise, Travelers' arguments seem to demand evidence of the fraud and actual proof of the dual agency.  Rule 9(b) does not require what Travelers demands, and the Court finds that Plaintiffs' allegations as to a fiduciary duty are sufficient to satisfy the requirements and purposes of the rule.

As indicated above, the existence of a fiduciary duty or dual agency in this case is, in part,

a question of fact that will have to be determined at a later time.  The Court makes no finding as to whether Travelers' agents acted as dual agents or whether they otherwise owed Plaintiffs a fiduciary duty.  The Court finds only that, based on the allegations made in the Complaint, Plaintiffs have adequately alleged a fiduciary duty owed by Travelers and are entitled to proceed with the case.  In other words, at this stage it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Craighead*, 899 F.2d at 489.

### iii.    Superior Knowledge and Partial Speaking

The Court has established that Plaintiffs' Complaint adequately alleges a duty to disclose on behalf of Travelers, thereby finding that Plaintiffs have sufficiently pleaded the first element of a claim for fraud.  The Court, therefore, only briefly addresses Travelers' attack on the other theory on which Plaintiff alleges a duty to disclose - i.e., that Travelers owed Plaintiffs a duty of full and fair disclosure arising from Travelers' superior knowledge of the policy prices and arising from a partial speaking by Travelers in revealing only the higher-priced policies.

In this instance, Travelers does not attack Plaintiffs' allegations on the basis that it lacks the particularity required by Rule 9(b); rather, Travelers argues that no claim may be based on a duty arising from superior knowledge or a partial speaking under Plaintiffs' allegations.  Travelers relies almost solely on *Blon* for this argument, pointing out that the Supreme Court of Ohio in *Blon* considered a duty to disclose arising from superior knowledge and a partial speaking but, nonetheless, determined that no such duty existed in that case.  *Blon*, 35 Ohio St.3d at 101.  As already discussed, *Blon* is distinguishable from the present case and not controlling.  *See infra* Section II.B.1.a.i.  In addition, like a fiduciary duty, the existence of any duty arising from Travelers' alleged superior knowledge or a partial speaking is, at least in part, a factual question.  *See*

*Prudential Ins. Co. v. Eslick*, 586 F.Supp. 763, 766 (S.D. Ohio 1984) (characterizing a duty based on one party's superior knowledge as arising from a "de facto fiduciary relationship," and noting that "the existence of a de facto fiduciary relationship is a question of fact and depends on the circumstances of each case.").

It does not follow that, simply because the *Blon* court found that no duty to disclose existed in that case, Plaintiffs will not be able to prove any set of facts consistent with their allegations that would entitle them to relief in this case. Plaintiffs may be able, through discovery, to produce facts that distinguish the situation in *Blon* from the situation in this case. *Blon* certainly does not mandate that Plaintiffs should be denied that opportunity.[4]

### b. Justifiable Reliance

Travelers also argues that Plaintiffs' have failed to plead a cause of action for fraud because they have not alleged adequately the fifth element of such a claim: that Plaintiffs justifiably relied on Travelers' alleged concealment. We first turn to the Complaint itself to assess Travelers' argument.

The Complaint alleges that "[h]ad Defendants informed Plaintiffs that they could pay substantially less for identical insurance, they would have done so." The Complaint also alleges that, by making only a partial disclosure of the higher-priced policies, "Defendants knew that they would, and in fact did, induce Plaintiffs and Class members to purchase Travelers homeowners insurance

---

[4] Travelers also argues that, even if there is merit to Plaintiffs' superior knowledge argument, Travelers does not, in fact, have superior knowledge because all of its insurance rates are on file with the Superintendent of Insurance, and, therefore, available to the public. According to Travelers, Plaintiffs could simply have learned of the existence of the lower rates by checking with the Superintendent of Insurance. The Court does not agree that the law imposes such a duty on Plaintiffs, and, therefore, does not find Travelers' argument persuasive.

at the higher price, when any rational consumer objectively would have purchased identical Travelers insurance at the lower available price, had Defendants and their agents disclosed that price." Plaintiffs essentially allege that, if they had known of the lower-priced policies, they (and any rational consumer) would have opted for one of those policies. Those allegations clearly demonstrate reliance, but the question remains as to whether they demonstrate <u>justifiable</u> reliance.

Travelers argues that, in order to plead the element of justifiable reliance with particularity, Plaintiffs must allege that they exercised diligence in discovering the fraud. At a minimum, Travelers argues, Plaintiffs must allege that they took the "basic and common sense action" of shopping around for a better rate, or that they were somehow prevented from doing so. According to Travelers, only allegations such as those can establish that the reliance was justified.

To support its argument, Travelers cites to a case from the Southern District of Ohio, in which the court explained that, "[w]here a plaintiff asserts fraudulent concealment, the plaintiff must allege, with particularity, its own due diligence to discover the fraud." *Seifer v. PHE, Inc.*, 196 F.Supp.2d 622, 632 (S.D. Ohio 2002) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975)). In enunciating that requirement, the *Siefer* court relied on a Sixth Circuit opinion*, Dayco*, for the apparent proposition that <u>all</u> assertions of fraudulent concealment must include allegations, with particularity, of a plaintiff's own due diligence in discovering the fraud. This Court's reading of *Dayco*, however, does not support that proposition. The issue in *Dayco* was whether the plaintiff adequately alleged fraudulent concealment of activities giving rise to an anti-trust violation, such that the Clayton Act's statute of limitations was tolled and the complaint was not time-barred. *Dayco Corp.*, 523 F.2d at 394. The Sixth Circuit held that "[i]f the plaintiff had delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding

18

his belated discovery 'and the delay which has occurred must be shown to be consistent with the requisite diligence.'" *Id.* (quoting *Wood v. Carpenter*, 101 U.S. 135 (1879)).  The issue, then, was whether the plaintiff had alleged adequately that he had engaged in due diligence to discover the alleged fraud because only such diligence would toll the statute of limitations.

This Court does not read *Dayco* as requiring all assertions of fraudulent conduct to contain specific allegations of the plaintiff's due diligence in attempting to discover the fraud.  As the statute of limitations appears not to be an issue in this case, the Court does not impose the requirement Travelers would have the Court impose based on *Seifer* - i.e., that Plaintiffs must plead, with particularity, their own due diligence to discover the alleged fraud in this case.  Certainly, Plaintiffs must allege that their reliance on the alleged concealment was justifiable, but they are not required to allege specific steps constituting due diligence to discover the fraud.

Travelers also supports its argument by citing to *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343 (6th Cir. 2000), in which the Sixth Circuit upheld the dismissal of a fraud claim for failure to allege that a cigarette smoker justifiably relied on a tobacco company's misrepresentations.  In that case, the Sixth Circuit focused on the district court's reasoning that "[i]t would border on speculation for a jury to try to ascertain what, if any, information plaintiff's decedent accepted or rejected; what, if any, of that information plaintiff's decedent relied upon in making her decision to smoke."  *Id.* at 353.  In the present case, Plaintiffs' Complaint makes clear what information they accepted (the availability of the higher-priced policies), what was concealed from them (the availability of the lower-priced policies), and what information they relied upon in making their decision to purchase their insurance policy.  *Glassner*, therefore, does not help Travelers.

The Court again does not find that Rule 9(b) demands what Travelers asks.  Given the

19

admonition in *Michaels* that Rule 9(b) should be read in harmony with Rule 8, the Court finds that Plaintiffs have adequately alleged that they justifiably relied on the alleged concealment, especially when read in the context of Plaintiffs' allegations that Travelers' agents, as dual agents, owed Plaintiffs a fiduciary duty. Plaintiffs essentially allege that they relied on the representations of an agent owing them a fiduciary duty, which the Court finds to be a sufficient allegation of justifiable reliance.

### 2. Count II - Unjust Enrichment

Next, Travelers argues that Plaintiffs cannot state a claim for unjust enrichment because the parties' relationship is governed by an express written agreement – the insurance policy. In support of its argument, Travelers cites cases holding that the existence of an express contract between the parties bars the equitable remedy of unjust enrichment. *Saraf v. Maronda Homes, Inc. of Ohio*, 2002 Ohio App. LEXIS 6528 at *11 (Ohio Ct. App. Dec. 10, 2002); *see also In re Estate of Popov*, 2003 Ohio App. LEXIS 4047 at *12 (Ohio Ct. App. May 21, 2003) ("a claim pursuant to quasi-contract is incompatible with claims pursuant to an express contract, and the existence of an express contract between the parties bars recovery under the doctrine of unjust enrichment."). Travelers contends, therefore, that the existence of the insurance policy in this case precludes Plaintiffs' claim for unjust enrichment.

In response, Plaintiffs argue that they do not seek a remedy under a contract in this case (i.e., they are not seeking to enforce rights provided in the insurance policy itself), and that their claim for unjust enrichment is based on conduct and events that exist independently from the contractual terms of the insurance policy. Plaintiffs do not take issue with the cases Travelers cites; indeed, they cite some of the very same cases. Plaintiffs contend that those principles simply do not apply here

20

because Plaintiffs' claims do not involve subject matter governed by the insurance policy.  In addition, Plaintiffs also argue that the existence of a contract does not bar an unjust enrichment claim when the claim is based on alleged fraud.

The Court agrees with Plaintiffs.  A careful reading of the case law reveals that a claim for unjust enrichment is barred when a plaintiff seeks a remedy <u>under the terms of the contract</u> and when <u>the subject matter of the dispute is governed by the contract</u>.  *See Wolfer Ent., Inc. v. Overbrook Dev. Corp.*, 132 Ohio App.3d 353, 357 (1999), (explaining that unjust enrichment claims are barred when a party seeks a remedy under a contract <u>because the terms of the agreement define the parties' relationship</u>.),  *jurisdictional motion overruled*, 86 Ohio St.3d 1420 (1999) (emphasis added).  In this case, Plaintiffs' claim for fraud is not dependent on the interpretation of any provision or section of the insurance policy, any rights granted in the policy, or any subject matter governed by the policy.  As Plaintiffs properly point out, the Complaint does not cite to the policy to argue that Travelers breached any obligations under the policy, nor does Travelers cite to any provisions in the policy it contends govern the dispute.

The policy, of course, does not cover the "deceptive sales scheme" that Plaintiffs allege; indeed, that is the whole point of the Complaint - Plaintiffs allege that the pricing plan was <u>concealed</u> from them.  Unlike a claim for breach of contract or a suit to compel insurance coverage, for example, which likely would require the Court to examine the language of the insurance policy itself to resolve the dispute, Plaintiffs' claim for fraud involves facts and actions completely separate from the policy.  In addition, even if the policy touched on the claim at issue in this case, the existence of an express contract only bars a claim for unjust enrichment "in the <u>absence of fraud</u>, bad faith, or illegality." *Wolfer Ent., Inc.,* 132 Ohio App.3d at 357. The presence of fraud is the precise claim in

21

this case.  The Court, therefore, does not find that Plaintiffs' claim for unjust enrichment is barred by the existence of the insurance policy in this case.

### 3.    Filed Rate Doctrine and Doctrine of Primary Jurisdiction

Lastly, Travelers argues that Plaintiffs' Complaint is barred by both the filed rate doctrine and the doctrine of primary jurisdiction.  The filed rate doctrine holds that any rate filed with the governing regulatory agency is per se reasonable and unassailable in judicial proceedings.  *See Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).  Travelers argues that, because its rates are filed with and approved by the Ohio Superintendent of Insurance, Plaintiffs may not challenge those rates in this Court.  In addition, the doctrine of primary jurisdiction, a related doctrine, holds that "questions within the special competency of an administrative agency should be resolved by that agency."  *Alltel Tennessee, Inc. v. Tennessee Public Service Comm'n*, 913 F.2d 305, 309 (6th Cir. 1990).  As to this doctrine, Travelers argues that this Court should defer to the Ohio Superintendent of Insurance because of that agency's specialized expertise in the area of insurance rates.  The Court disagrees with both of Travelers' contentions.

First, the filed rate doctrine does not apply to the present case because Plaintiffs are not challenging the <u>reasonableness</u> of Travelers' insurance rates; they challenge an alleged deceptive sales practice.  Plaintiffs cite *Lazarus v. Ohio Cas. Group*, 144 Ohio App.3d 716 (2001), which is instructive on this point.  In *Lazarus*, class plaintiffs brought an action against an automobile insurer for failing to inform plaintiffs of a change in the law as it relates to uninsured/underinsured motorist ("UMI") coverage.  *Id.* at 719.  The change in the law would have allowed some households to obtain the same amount of UMI coverage by purchasing UMI coverage for only one vehicle in the household instead of obtaining UMI coverage for each vehicle in the household, as was required for

22

full coverage under the prior law.  *Id.*  The lawsuit was based on the failure of the insurer to inform

consumers of that change.  *Id.*  The defendant argued that plaintiffs were merely complaining about

a rate, which defendants contended was in the exclusive jurisdiction of the Ohio Superintendent of

Insurance.  *Id.*  The court rejected that argument, explaining that,

> The issues raised in these claims focus not on the actual rate charged but rather on
> information provided by the insurance company regarding what the rates cover.  In
> other words, the issues are fraud and deceptive practices, unjust enrichment,
> conversion, breach of contract and fiduciary duty and negligence, not whether the rate
> charged was acceptable or not.

*Id.* at 721.  Likewise, in this case, Plaintiffs do not challenge whether Travelers' rates are

acceptable or reasonable, they challenge the legality of Travelers' and its agents' practices

in not revealing the availability of lower rates.  As such, Plaintiffs claims are not barred by

the filed rate doctrine.

Similarly, Plaintiffs' claims do not involve matters for which the Ohio Superintendent

of Insurance has specialized expertise.  Plaintiffs bring common law claims for fraud and

unjust enrichment, which are clearly within the scope of this Court's competency.  Because

the issue in this lawsuit is not the reasonableness of Travelers' insurance rates but the legality

of its multiple-tiered pricing plan and sales practices, the Court does not find that the Ohio

Superintendent of Insurance has exclusive jurisdiction over this case.  Neither the filed rate

doctrine nor the doctrine of primary jurisdiction, therefore, bars Plaintiffs' claims.

**III.    CONCLUSION**

For the reasons articulated above, the Court **DENIES** Travelers' Motion to Dismiss.


**IT IS SO ORDERED.**


**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 16, 2006**

24