## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **VINCENT ZANGARA, on behalf of himself** | : | |
| **and all others similarly situated,** | : | **Case No. 1:05cv731** |
| | : | |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **TRAVELERS INDEMNITY COMPANY** | : | **ORDER** |
| **OF AMERICA and TRAVELERS PROPERTY** | : | |
| **CASUALTY INSURANCE COMPANY,** | : | |
| | : | |
| **Defendants.** | : | |

Judgement was entered in this case on March 30, 2006.  *See* Doc. 63.  Presently before the Court is *Plaintiff's Motion for Relief from Judgment and Memorandum in Support of Motion* (Doc.72) ("Motion for Relief"), whereby Plaintiff seeks relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Defendants have opposed the motion (Doc. 75).  To his detriment, Plaintiff has not replied.  For the reasons outlined below, Plaintiff's Motion for Relief is **DENIED**.

## I.   **BACKGROUND**[1]

The case originally was filed on behalf of a putative class by named-Plaintiffs, Mary Presnell and Vincent Zangara.[2]  The named-Defendants were Travelers Property Casualty Insurance Company

---

[1]   A more comprehensive description of this case's background is outlined in the various prior orders.  *See e.g.,* Docs. 57 and 62.  Only as necessary, therefore, does the Court review that background here.

[2]   On February 2, 2006, Presnell withdrew as a  plaintiff.  *See* Doc. 54.  Herein, the Court references the putative class in the singular (*i.e.*, as Plaintiff or Zangara) because the instant motion is brought only by Vincent Zangara.

("TPCIC") and one of its subsidiaries, Travelers Indemnity Company of America ("TICA")

(collectively, "Travelers").   In sum, Zangara alleged that Travelers sells identical homeowners

insurance policies at various prices (*i.e.*, through independent subsidiaries – in this case, Zangara's

relationship was with TICA), but conceals the existence of the lower-priced (but otherwise identical)

policies from eligible consumers.  The complaint included claims for fraud and unjust enrichment

based on alleged deceptive sales practices.

Ultimately, the case was dismissed for lack of subject matter jurisdiction following Zangara's

request (*via* a motion for leave to amend the complaint – *see* Doc. 56) to substitute three new

plaintiffs *for himself*, and to join a new insurance company defendant.  The reason for the requested

substitution was that Zangara, the only remaining Plaintiff, concluded that he did not have a valid

claim because he had not purchased a higher-priced policy (*i.e.*, he concluded that TICA sold lower-

priced policies).  Zangara's motion for leave stated:

> On February 16, 2006, Travelers produced documents that indicated
> that the proper Defendants in this matter are [TPCIC] and The
> Standard Fire Insurance Company and that [TICA] is not a proper
> Defendant.  Further, due to the fact that Mr. Zangara was insured by
> [TICA], he does not have a claim against it or [TPCIC].

Doc. 56 at p. 1 (emphasis added).  Following Travelers' opposition, Zangara then claimed (for the

first time) in his reply brief that Travelers' counsel also had represented to him that TICA was the

Travelers' subsidiary that sold lower-priced policies in Ohio.[3]  In relevant part, his reply brief stated:

> On February 14, 2006, defendants' counsel informed Plaintiff's
> counsel that The Standard Fire Insurance Company . . . , not [TICA]
> . . . , is the [TPCIC] subsidiary that sells Travelers' higher-priced
> homeowners insurance.  Documents confirming these representations

---

[3]     Hereafter, the Court does may not differentiate between representations by
Travelers or its counsel because doing so is immaterial to the Court's analysis.

2

were subsequently produced [on February 16, 2006].

Doc. 63 at p. 2 (emphasis added).  The problem with Zangara's proposed amendment was that it removed him from the case because he admitted to having no claims.  Because a party without standing to assert a claim lacks standing to amend a complaint *to substitute* into the case parties who have claims, the Court dismissed the case and entered judgment against Zangara.  *See* Doc. 63.[4]

## II.    DISCUSSION

Simply stated, Zangara now claims that he was wrong; he now believes that he does have a claim (and always has had a claim) because he is now convinced that, contrary to his prior belief, TICA *was* selling higher-priced Travelers policies in March 2002 when he "purchased" his policy. He argues that, because his prior belief was premised on (1) his misunderstanding of certain documents and (2) misrepresentations by Travelers (as to facts impacting the facial validity of his claims), he is entitled to relief from the March 30, 2006 judgment *via* Rule 60(b).  For the following reasons, however, Zangara *has not sufficiently established* that extraordinary relief under Rule 60(b) is appropriate in this case.

---

[4]     In its order, the Court acknowledged that "Plaintiffs may file a new lawsuit naming the proper plaintiffs and defendants, and, upon refiling, mark the action as related, resulting in its transfer to the undersigned."  Doc. 62 at p.  7.  As a result, *Stanich, et al. v. Travelers Property Casualty Insurance Co.* (Case No. 1:06cv962), which purportedly includes the proper parties, was filed and transferred to the undersigned. Currently pending in *Stanich* is a motion for class certification.  Of note, Zangara indicates that, if the instant motion is granted, he will move to consolidate the revived case with *Stanich*.  Because the Court concludes that Zangara's Motion for Relief is not well-taken, it need not address what logistical issues, if any, may arise from consolidating Zangara's case (if revived) with *Stanich – i.e.*, the impact, if any, consolidation would have on the class certification proceedings.

3

### A.  **Legal Standard**

Zangara's motion only generally references Rule 60(b) as the basis for the relief sought. Given the portions of the rule he selectively quotes, however, it is reasonably clear that Zangara specifically relies on 60(b)(1) and 60(b)(3).[5] As does the Court, Travelers has focused only on those portions of the rule.

Resolution of motions under Rule 60(b) are left to the discretion of the district court. *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007).  Generally speaking, Rule 60(b) "is circumscribed by public policy favoring finality of judgments and termination of litigation." *Id.*  The rule's purpose is not to afford defeated litigants a second chance to convince a court to rule in their favor by presenting new explanations, legal theories or proofs. *Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).  As such, courts should favor the finality of judgments unless movants present compelling arguments for upsetting them. *In re Salem Mortgage Co.*, 791 F.2d 456 (6th. Cir. 1986) (the burden is on the movant to satisfy at least one of Rule 60(b)'s provisions).

Rule 60(b)(1) is addressed to justifiable errors or mistakes (or the like) that led to a challenged judgment.  It provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).  In addition to demonstrating one or more of these items, a movant must also demonstrate that he has a meritorious claim. *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156, 1160 (6th Cir.1980); *see also Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co., Inc.*,

---

[5]     As outlined below, Zangara *alternatively* relies on Rule 60(b)(1) only in the event Travelers presents a particular argument in opposition to his motion.  Travelers has not asserted the foreshadowed argument; arguably, therefore, Zangara relies only on Rule 60(b)(3).

4

953 F.2d 17, 20 (1st. Cir. 1992) ("There is, however, an additional sentry that guards the gateway to Rule 60(b) relief . . . a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise.").

Rule 60(b)(3) is addressed to fraud that led to a challenged judgment.  It provides that a court may relieve a party from a final judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."  FED. R. CIV. P. 60(b)(3). Motions brought under Rule 60(b)(3) generally are viewed with disfavor, and relief under that rule is an extraordinary remedy, granted only in exceptional circumstances.  *A & B Steel Shearing & Processing, Inc. v. U.S.*, 174 F.R.D. 65 (E.D. Mich. 1997).  A party seeking such relief, therefore, has the stringent burden of establishing the fraud or misrepresentation, and its impact, by clear and convincing evidence.  *McManus v. St. Joseph Hosp. Corp.*, 79 Fed. Appx. 170, 171-72 (6th Cir. 2003); *see also A & B Steel Shearing,* 174 F.R.D. at 67.  As with (b)(1), subsection (b)(3) also requires the movant to demonstrate that he has a meritorious claim to present in the event the motion is granted.  *Marshall v. Dolores Food Specialty Co.*, 95 F.R.D. 10, 13 (S.D. Ohio 1982) (citing *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156 (6th Cir. 1980)).

**B.    Analysis**

Zangara's motion is based on a relatively simple argument.  Principally, he contends that his "admission" that he did not have a claim against TICA was based on fraudulent representations by Travelers that TICA was Travelers' lowest-priced subsidiary in Ohio.  FED. R. CIV. P. 60(b)(3).  In the event Travelers were to claim that its representations were innocently erroneous, Zangara *alternatively* argues that he is also entitled to relief based on "mistake, inadvertence, surprise, or

5

excusable neglect." Fed. R. Civ. P. 60(b)(1).[6]  Among other things, Zangara's argument lacks critical supporting details.

Zangara's motion is supported by a declaration from one of his attorneys, Pierce Gore (Doc. 72, Ex. A – filed under seal).  Gore avers that, in January 2006, he received 544 pages of documents (specifically, Ohio rate filing information) from Travelers in anticipation of Zangara's deposition. *Id.* at ¶4.  Based on a rate-filing document that lists a pricing factor of "1.00" for TICA, Gore claims to have understood TICA to be the Travelers' subsidiary that sold <u>higher</u>-priced policies in Ohio (*i.e.*, as alleged in Zangara's complaint).  *Id*.  At Zangara's deposition, however, Gore avers that Travelers' counsel "<u>suggested</u> that Mr. Zangara might have paid Travelers' <u>lowest</u> available rate." *Id.* at ¶5 (emphasis added).  Gore provides no details, however, regarding the nature or circumstances of Travelers' purported "suggestion."

Gore then avers that, in February 2006, he received another 675 pages of documents from Travelers.  *Id.* at ¶7.  One of those documents lists a pricing factor of ".92" for TICA, which Gore claims suggests that TICA sold <u>lower</u>-priced policies.  *Id.*  Based on this document and "representations by Travelers' counsel," Gore avers that he concluded that TICA was Travelers' lower-priced subsidiary in Ohio.[7]  *Id.*  Gore then avers that, on February 27, 2006, Travelers' counsel "<u>confirmed </u>that [TICA] was Travelers' <u>lower</u>-priced mass marketing subsidiary in Ohio."  *Id.* at ¶8 (emphasis added).  As before, however, Gore provides no details regarding the nature and

---

[6]     As prefaced above, Travelers does not argue that its representations to Zangara were incorrect (innocently or otherwise).  Presumably, therefore, Zangara's relies only on Rule 60(b)(3).

[7]     Based on his declaration, the only "representation" upon which Gore could base this initial conclusion is the "suggestion" at Zangara's deposition.

6

circumstances of Travelers' purported "confirmation" (*e.g.*, the time frame to which the confirmation related).  *Id.*

Finally, Gore avers that, in December 2006 (after the *Zangara* case had been dismissed), Travelers produced "a chart" in the *Stanich* litigation.  *Id.* at ¶10.  According to Gore, the chart identifies state-by-state changes to various Travelers' subsidiaries' insurance rates.  *See* Doc. 72, Ex. A-10 (filed under seal).  Under the Ohio section of the chart, the purported change for TICA is "2/17/02 (1.00)."  Zangara argues that this document demonstrates that TICA was <u>not</u> the <u>lowest</u>-price Travelers entity <u>as of February 2002</u>.  Because his original claims pertained to his alleged "purchase" of a TICA policy on <u>March 19, 2002</u>, Zangara argues that his original claims were, therefore, proper.

Even before turning to Travelers' responses, the Court is compelled briefly to address a deficiency in Zangara's factual support for his motion.  The crux of Zangara's argument is that Travelers misled him regarding TICA's rates relative to those of other Travelers' subsidiaries.  In support of that charge, however, Zangara has presented only a vague declaration in which his lawyer avers that Travelers  "suggested," and later "confirmed," that TICA was Travelers' subsidiary that sold lower-priced policies in Ohio.  The declaration provides no details to substantiate the nature and circumstances of these alleged representations, however.  For example, it does not identify *who* made the representations, *what* was said and whether any qualifications accompanied Travelers' statements (*e.g.*, regarding time frames).  As evidenced by Travelers' arguments *infra*, it views TICA's March 1998 rates as the relevant rates *vis-a-vis* the viability of Zangara's claims.  Zangara, however, focuses on the pricing in March 2002.  Gore does not aver that Travelers "confirmed" that TICA was the lowest-price subsidiary <u>in March 2002</u>; he simply avers that Travelers confirmed TICA was

7

Travelers' lowest-priced subsidiary.  Absent more detail, the Court cannot determine the nature and circumstances of the purported "representations."  This is particularly the case when Zangara's burden is to demonstrate, by clear and convincing evidence, that the representations were fraudulent. This deficiency alone warrants denial of Zangara's Motion for Relief.  It is not, however, the only deficiency that exists.

Travelers presents a variety of arguments in support of its view that:  (1) as a factual matter, Zangara was correct about not having valid claims; and (2) as a legal matter, Zangara has not satisfied (and can not satisfy) his burdens of demonstration under Rules 60(b)(1) and (3).  First, Travelers argues that Zangara initially "purchased" his policy in March 1998, rather than in March 2002.  It argues that Zangara's original complaint made clear that "new business" was at issue in this case, such that Zangara's *initial* purchase determines the rate at issue.[8]  In this regard, Travelers characterizes Zangara's March 2002 transaction as a "renewal" of his previously-"purchased" policy, a characterization that no doubt colored any representations Travelers may have made regarding rates.[9]

While Travelers provides no legal support for its view that the 1998 rate governs Zangara's claims, the argument appears to be a straight-faced one under the circumstances.  For purposes of the instant motion, the argument's purpose is not to establish with certainty the validity or invalidity

---

[8]  Travelers represents (and Zangara does not dispute) that TICA was the lowest-priced Travelers subsidiary in March 1998.

[9]  Travelers also argues that, based on its internal policies, the internal renewal rate (for premium purposes) for Zangara's "renewed" policy was the rate in place as of January 18, 2002.  Accordingly, even if the March 19, 2002 transaction date is used, Travelers maintains that Zangara received the pre-February 17, 2002 rate identified in the chart.  Of note, however, Travelers does not expressly confirm that the pre-February 17, 2002 rate was the "lowest" Travelers' rate.

of a claim (as in a summary judgment context), but rather to justify Travelers' state of mind (*i.e.*, innocent *vs.* fraudulent) in connection with representations it may have made relative to TICA's rates.  Regardless, Zangara has not challenged Travelers' argument – either from a factual or legal point of view.[10]  By not filing a reply brief, Zangara has: (1) rested his request for extraordinary relief entirely on his opening papers, which, as outlined *supra*, are independently deficient given Rule 60(b)'s burdens; and (2) left Travelers' opposition completely unchallenged.

Because it is neither the Court's function nor its responsibility to develop a party's position (*i.e.*, to research, to articulate and to advocate it), the Court accepts *as unopposed* Travelers' argument, and concludes that Zangara has not sufficiently demonstrated fraud by Travelers.  This is especially appropriate in light of the burdens of demonstration Zangara faces under Rule 60(b).

Second, notwithstanding its view that Zangara's prior belief that he has no claims is correct, Travelers argues that Rule 60(b)(1)'s "mistake" (or any other) requirement cannot be based on "informal" discussions with Travelers' counsel.[11]  Again, Zangara's decision not to respond to this argument leaves the Court will little choice but to accept the argument as unopposed.  As before, the Court declines to carry Zangara's burdens for him, especially when the discussions upon which he relies are so ill-defined.  As noted *supra*, it is not the Court's function to manufacture responsive

---

[10]  For example, from a factual point of view, Zangara has offered no evidence (nor any argument) to demonstrate that Travelers' representations (whatever they were exactly) relative to TICA's rates related to the March 2002 time frame.

[11]  Given the lack of detail in Gore's declaration regarding the nature and circumstances of his discussions with Travelers, and the lack of a reply, the Court sees no basis upon which to dispute Travelers' characterization of the discussions as "informal."

9

positions for Zangara, and then analyze those positions in conjunction with Travelers' arguments.[12]

Third, Travelers argues that Zangara cannot satisfy Rule 60(b)(3)'s fraud requirement because Travelers did not misrepresent anything.  To some extent, this argument is repetitive of Travelers' first argument because it is tied to the view that Zangara "purchased" his policy in 1998.  Travelers maintains that its view – whether Zangara understood it or not – has always been that Zangara bought his policy in 1998, and renewed it in March 2002 (as well as other times in between, perhaps).  Further, Travelers maintains that its representations were not inaccurate (and certainly not fraudulent) because Zangara acquired his policy through the Ohio Motorist Insurance Agency, and only one price was available for such policies.[13]  From the Court's perspective, whether or not Travelers' articulated these underlying assumptions when making representations to Zangara remains an open question due in large part to Zangara's failure adequately to describe the nature and circumstances of the discussions in question.  Regardless of whether the assumptions are correct, therefore, the Court can hardly conclude that Zangara has established *by clear and convincing evidence* that Travelers' representations were fraudulent.[14]

---

[12]     The Court accepts Travelers' arguments as unopposed because they are not facially without merit under the circumstances of this case.  The Court has not, however, researched an analyzed each of Travelers' arguments (either legally or factually).

[13]     According to the parties, the Ohio Motor Insurance Agency sold Travelers' insurance in Ohio pursuant to an agreement with the American Automobile Association.

[14]     The Court acknowledges that the relationship between counsel in this case has been somewhat acrimonious, and that at least some of this acrimony has arisen from Plaintiff's belief that Travelers has been less than forthcoming in its discovery responses.  This overlay hardly supports an inference of fraud, however, and can not relieve Plaintiff of his extraordinary burdens under Rule 60(b).

10

Finally, Travelers argues that, even if Zangara could satisfy Rule 60(b)(1) and (3)'s other requirements (which assumes Zangara's previously-asserted claims were valid), he cannot (and has not) establish that his previously-asserted claims are "meritorious."  Setting aside the issue of whether TICA was a higher-priced Travelers' subsidiary at the relevant time (whenever that is), Travelers argues that Zangara's fraud-based claims cannot succeed because:  (1) he cannot satisfy the "reliance" element because he testified that he did not base his decision on price; and (2) he ratified the most-recent price he received by later "renewing" his policy.  Zangara's Motion for Relief certainly does not speak to the substantive "merit" of his prior claims – *i.e.*, whether he they were likely to prevail.  And Zangara's failure to reply, again, leaves the Court little choice but to conclude that Zangara *has not demonstrated* that he has a meritorious claim, as is required by Rules 60(b)(1) and (3).

Whether Travelers' many arguments have merit or not, *they are unchallenged.*  Because Zangara has not presented a clear and convincing argument in support of his contention that his prior admission that he "had no claims" was based on justifiable mistake (on his part) or fraud (on Travelers' part), the Court finds that extraordinary relief under Rule 60(b) is not appropriate in this case.  The Court notes, moreover, that Rule 60(b) requires an abundance of diligence.  Zangara filed his motion on the one-year anniversary of the underlying judgment, which is to say that he filed it on the latest possible day.[15]  Seemingly, he then abandoned his cause once Travelers opposed the motion.  In so doing, Zangara has failed to satisfy Rule 60(b)'s diligence obligation.

---

[15]     *See* FED. R. CIV. P. 60(b) ("The motion shall be made withing a reasonable time, and for [subsections] (1) . . . and (3) not more than one year after the judgment, order, or proceeding was entered or taken.").

11

III.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Relief (Doc. 72) is **DENIED**.  The Court will not upset the March 30, 2006 judgment (Doc. 63).

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley

**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 17, 2008**

12